UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DENNIS SCOTT, CHAD DRIGGERS,
DOUGLAS WILLIS and GEORGE
ROWLAND,

    Plaintiffs,

v.                  Case No.: 6:22-cv-2192-WWB-RMN

CITY OF DAYTONA BEACH FLORIDA,

    Defendant.
               /

**ORDER**

THIS CAUSE is before the Court on Plaintiffs' Second Motion for Preliminary Injunction (Doc. 39), Defendant's Response (Doc. 44), and Plaintiffs' Reply (Doc. 49). For the reasons set forth below, Plaintiffs' Motion will be granted.

**I. BACKGROUND**

Daytona Beach City Ordinance 19-27, codified at Code of Ordinances, City of Daytona Beach, § 66-1 (the "**Ordinance**"), regulates panhandling[1] within its city limits.

---

[1] The Ordinance defines "panhandle" as follows: "to beg or make any demand or request made in person for an immediate donation of money or some other article of value from another person for the use of one's self or others, including but not limited to for a charitable or sponsor purpose or that will benefit a charitable organization or sponsor. As used in this article, the word 'solicit' and its forms are included in this definition. Panhandling is considered as having taken place regardless of whether the person making the solicitation received any contribution. Any purchase of an item for an amount far exceeding its value, under circumstances where a reasonable person would understand that the purchase is in substance a donation, constitutes a donation as contemplated in this definition. Begging is included in this definition of panhandling. Soliciting is included in this definition of panhandling." § 66-1(b)(3).
The Ordinance does not provide definitions for begging and soliciting. However, ordinarily, "solicitation" is defined as "[t]he act or an instance of requesting or seeking to obtain something; a request or petition," and "beg" is defined as "[t]o request earnestly;

Daytona Beach, Fla., Code of Ordinances ch. 66, art. I, § 66-1 (2022).  As relevant to the instant Motion, the Ordinance prohibits panhandling in the following areas of Daytona Beach: within twenty feet of the entrance or exit of commercial property, bus stops and other public transportation facilities, ATMs, public parking lots and garages, parking meters, and public restrooms; within one hundred feet of daycares and schools; within one hundred and fifty feet of traffic intersections; and on the city boardwalk.  § 66-1(c)(3).  The Ordinance also makes it unlawful to panhandle, solicit, or beg at any operating outdoor dining area, amphitheater seating area, playground, or outdoor merchandise area; at any transit stop, taxi stand, or in a public transit vehicle; while the person being solicited is standing in line waiting to be admitted to a commercial establishment; by touching the person being solicited without that person's consent; by using profane or abusive language during the solicitation or following an unsuccessful solicitation; by using any gesture or act intended to cause a reasonable person to be fearful or feel compelled to accede to the solicitation; while under the influence of alcohol or an illegal controlled substance;  or  after  dark.[2]   § 66-1(c)(4)(b)–(i).   Finally,  the  Ordinance  prohibits "[a]ggressive [p]anhandling"[3] "on any sidewalk, highway, street, roadway, right-of-way,

---

to beseech."  *Solicitation*, Black's Law Dictionary (11th ed. 2019); *Beg*, Black's Law Dictionary (11th ed. 2019).

[2] "After [d]ark means from one half hour after sunset until one-half hour before sunrise."  § 66-1(b)(1).

[3] "Aggressive Panhandling" means:

a. To approach or speak to a person and demand, request or beg for money or a donation of valuable property in such a manner as would cause a reasonable person to believe that the person is being threatened with imminent bodily injury or the commission of a criminal act upon the person approached or another person in the solicited person's company, or upon

2

parking lot, park, or other public or semi-public area or in any public building lobby, entranceway, plaza or common area, public forum or limited public forum" and further prohibits a person from approaching a driver or passenger of a motor vehicle for the purpose of panhandling, soliciting, or begging if done in an "aggressive manner."[4] § 66-

> property in the person's immediate possession (for example, placing oneself within 2 feet of a solicited person and/or using abusive or profane language in a loud voice while demanding or requesting money); or
>
> b.     To maintain contact with a solicited person and continue demanding, requesting or begging for money or a donation of valuable property after the solicited person has made a negative response to an initial demand or request for money or a donation (for example, walking in front of, next to, or behind a solicited person while continuing to demand, request or beg for money from that person after that person has refused to donate or give money); or
>
> c.     To obstruct, block or impede, either individually or as part of a group of persons, the passage or free movement of a solicited person or a person in the company of a solicited person, including persons on foot, on bicycles, in wheelchairs or operating motor vehicles or persons attempting to enter or exit motor vehicles (for example, walking, standing, sitting, lying, or placing an object in such a manner as to block passage of another person or vehicle, or to require another person or driver of a vehicle to take evasive action to avoid physical contact); or
>
> d.     To touch or cause physical contact to a solicited person or a person in the company of a solicited person, or to touch any vehicle occupied by a solicited person or by a person in the company of the solicited person, without the person's express consent; or
>
> e. To engage in conduct that would reasonably be construed as intended to intimidate, compel or force a solicited person to accede to demands.

§ 66-1(b)(2).

[4] The Ordinance also prohibits aggressive panhandling on private property when certain conditions are met, but Plaintiffs do not challenge this provision and instead challenge "only those provisions of the Ordinance[] that apply to traditional public forums." (Doc. 35, ¶ 7); *see also* § 66-1(c)(2).

3

1(c)(1), (4)(a). Violation of the Ordinance is punishable by a jail sentence, not to exceed sixty days, or a fine, not to exceed $500.00, or both. § 66-1(d) (citing Daytona Beach, Fla., Code of Ordinances ch. 1, § 1-14 (2022)).

Plaintiffs Dennis Scott, Chad Driggers, Douglas Willis, and George Rowland live in or near Daytona Beach and all experience poverty.[5] (Doc. 35, ¶¶ 1, 12–15). Plaintiffs request charity by standing on public sidewalks or the medians and shoulders of public streets in areas frequented by pedestrians, near businesses, or near intersections and hold signs communicating their request for assistance or offer tokens in exchange for donations. (*Id.* ¶ 1). Plaintiffs receive food, gift cards and cash, and care packages containing water, hygiene products, and clothing items. (*Id.* ¶¶ 79, 92, 105, 118).

Since the Ordinance was enacted on February 6, 2019, local law enforcement has made at least 246 arrests for violations of the Ordinance. (*Id.* ¶ 68; Doc. 39-8 at 1). Driggers has been arrested five times for violations of the Ordinance, and all Plaintiffs have received warnings from local law enforcement regarding the Ordinance. (Doc. 35, ¶¶ 80, 94–95, 108, 120). Due to the threat of arrest and prosecution for violations of the Ordinance, Plaintiffs have reduced the frequency of their solicitations or moved outside city limits when soliciting. (*Id.* ¶¶ 12–15). Plaintiffs allege that they want and need to continue to solicit donations to survive. (*Id.*).

As a result of the foregoing, Plaintiffs brought suit against Defendant, City of Daytona Beach, pursuant to 42 U.S.C. § 1983 for violations of their First Amendment

---

[5] Scott, Driggers, and Willis do not have permanent housing and frequently sleep in public parks or other public areas in Daytona Beach. (Doc. 35, ¶¶ 12–14). Rowland recently began renting a shared room in Volusia County but previously experienced homelessness and would also sleep in public parks or other public areas in Daytona Beach. (*Id.* ¶ 15).

rights to freedom of speech and expression. Plaintiffs challenge the following provisions of the Ordinance as unconstitutional on their face and as applied to Plaintiffs: §§ 66-1(c)(3), (c)(b)–(d) ("**Location-Based Provisions**") (Claim 1), § 66-1(c)(4)(i) ("**After-Dark Provision**") (Claim 2), §§ 66-1(c)(3)(g), (c)(4)(a) ("**Traffic Provisions**") (Claim 3), and §§ 66-1(c)(1), (c)(4)(a), and (c)(4)(e)–(h) ("**Conduct-Related Provisions**") (Claim 4). Thereafter, Plaintiffs filed the Second Motion for Preliminary Injunction.

## II.  LEGAL STANDARD

"The grant or denial of a preliminary injunction is within the sound discretion of the district court[.]" *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). A district court may only grant injunctive relief if the moving party establishes: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion' as to each of the four prerequisites." *Id.* (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)). "[P]reliminary injunctions of legislative enactments— because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits—must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts." *Ne.*

*Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).

## III. DISCUSSION

Plaintiffs seek a preliminary injunction enjoining Defendant from enforcing the Ordinance's Location-Based Provisions, After-Dark Provision, Traffic Provisions, and Conduct-Related Provisions (collectively, "**Challenged Provisions**"). In their Motion, Plaintiffs argue these provisions are facially unconstitutional. Defendant opposes the requested relief.

### A. Evidentiary Hearing

Along with their Motion, Plaintiffs filed a Request for Oral Argument on Second Motion for a Preliminary Injunction (Doc. 40). Thereafter, the Court ordered the parties to submit a joint notice to inform the Court if an evidentiary hearing was necessary to resolve the merits of Plaintiffs' Motion, including identifying with particularity any disputed issue of material fact or credibility determination that would impact the Court's resolution of the Motion. (Doc. 41 at 1). In the Joint Notice on Evidentiary Hearing ("**Joint Notice**," Doc. 45), Defendant requests a hearing because "there are factual issues which must be fully explored[.]" (*Id.* at 2). Plaintiffs argue that no evidentiary hearing is necessary because the facts Defendant identified either are not in dispute or are not material. (*Id.*).

Having reviewed the parties' submissions, the Court finds that Defendant has failed to state with sufficient particularity any material issue of fact or credibility determinations necessitating an evidentiary hearing.[6] Therefore, the Court can and will

---

[6] Defendant asserts in the Joint Notice that "[a]s noted in Defendant's Response to the Plaintiff's Second Motion for Preliminary Injunction, there are significant factual and legal issues with respect to Plaintiffs' standing to challenge aspects of Daytona Beach's

6

resolve the pending Motion on the paper record submitted by the parties. *See Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002) ("An evidentiary hearing is required for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." (quotation omitted)); *Bethune-Cookman, Univ., Inc. v. Dr. Mary McLeod Bethune Nat'l Alumni Ass'n*, No. 22-14257, 2023 WL 3704912, at *4 (11th Cir. May 30, 2023) (holding an evidentiary hearing was not required prior to the district court ruling on a motion for preliminary injunction); *see also Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1274 (11th Cir. 2005) ("The First Amendment questions . . . are purely legal; indeed, [Plaintiffs'] constitutional challenge to the [Ordinance] is facial rather than as applied, so that our resolution of the legal questions is only minimally intertwined with the facts.").

    **B.**    **Likelihood of Success on the Merits**

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting U.S. Const., amend. I). "Above 'all else, the First Amendment means that government' generally 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) (quoting *Police Dept. of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)). "A regulation of speech is facially content

---

panhandling ordinance." (Doc. 45 at 3). However, upon review of Defendant's Response, Defendant does not raise the issue of Plaintiffs' standing, and such passing and vague reference to standing in the Joint Notice, which appears to be a typographical error, is insufficient to bring the issue before this Court.

7

based under the First Amendment if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1471 (2022) (quoting *Reed*, 576 U.S. at 163). Content-based laws are subject to strict scrutiny, whereas content-neutral laws are subject to a lower level of scrutiny. *Barr*, 140 S. Ct. at 2346 (citing *Reed*, 576 U.S. at 163). "Content-based laws . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.

The parties dispute whether the Challenged Provisions are content-based restrictions on speech. Requesting charity—whether it is labeled panhandling, begging, or soliciting—is protected under the First Amendment. *See Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980) ("[C]haritable appeals for funds, on the street or door to door, involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes—that are within the protection of the First Amendment."); *Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999) ("Like other charitable solicitation, begging is speech entitled to First Amendment protection."). "[R]estrictions on solicitation are not content based and do not inherently present 'the potential for becoming a means of suppressing a particular point of view,' so long as they do not discriminate based on topic, subject matter, or viewpoint." *Austin*, 142 S. Ct. at 1473 (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981)).

In this case, the Challenged Provisions are content based because they apply exclusively to solicitations or requests for charitable donations. Stated differently, under the Challenged Provisions, individuals are only prohibited from asking for charitable donations while permitted to solicit regarding any other topic. *See Messina v. City of Fort Lauderdale*, 546 F. Supp. 3d 1227, 1240–41 (S.D. Fla. 2021) (holding a panhandling ordinance to be content based because "people are free to solicit pedestrians . . . for advice, for directions, for their prayers, for a signature on a petition, to read a treatise by John Locke, to join a political party, to visit a restaurant, to come to church, to put on Tefillin, to shake a Lulav, to kiss an Etrog, to join a softball team, etc." and "[a]s long as the speaker doesn't say something to the effect of 'I'm poor, please help' or 'Do you have some spare change?' he may approach a stranger anywhere in the City and utter any *other* message"); *see also Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*, 470 F. Supp. 3d 888, 903 (S.D. Ind. 2020) (holding that a statute's "plain text establishes its content-based nature, because it defines the prohibited conduct by referring to the content of the speech – a request for an immediate donation of money or something else of value – and by referring to the function of the speech – requesting the donation or something else of value").

Contrary to Defendant's arguments, this is not a case where the government regulates all types of solicitation, without regard to topic, subject matter, or viewpoint. *See, e.g.*, *Heffron*, 452 U.S. at 649 (upholding a Minnesota regulation restricting all solicitation and sale or distribution of merchandise at the Minnesota State Fair to a designated area as content neutral, reasoning that it "applie[d] evenhandedly to all who wish[ed] . . . to solicit funds," regardless of whether the solicitation was for commercial or

charitable purposes). The Ordinance defines panhandle as "to beg or make any demand or request made in person for an immediate donation of money or some other article of value from another person for the use of one's self or others" and provides "the word 'solicit' and its forms are *included*" in the definition of panhandling. § 66-1(b)(3) (emphasis added). A plain reading of this definition demonstrates that, under the Ordinance, "solicit" is treated as a subset of panhandling rather than referring more broadly to all types of solicitations as Defendant argues. Further, when reading the Ordinance as a whole, it is clear it applies only to charitable solicitations. In sum, because the "Ordinance prohibits one topic and allows all others, it is content based." *Messina*, 546 F. Supp. 3d at 1241; *see also Reed*, 576 U.S. at 156 ("[T]he First Amendment's hostility to content-based regulation [also] extends . . . to prohibition of public discussion of an entire topic[.]") (quoting *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 537 (1980)).

Much of Defendant's argument centers around its proposition that *Austin* overturned the effect of *Reed* on "solicitation laws" like the Ordinance at issue in this case. This Court disagrees. At issue in *Reed* was a sign code that subjected designated categories of signs, including ideological, political, and temporary, to different restrictions. *Reed*, 576 U.S. at 159–161. The *Reed* Court held the sign code to be content based because it "single[d] out specific subject matter for differential treatment, even if it [did] not target viewpoints within that subject matter." *Id.* at 169. Later, in *Austin*, the Court considered whether a law prohibiting off-site billboards but allowing on-site advertising was content based. *Austin*, 142 S. Ct. at 1469–70. There, the Court held the law was content neutral because it did "not single out any topic or subject matter for differential

treatment" and further reasoned that the law's "on-/off-premises distinction [was] . . . similar to ordinary time, place, or manner restrictions," as "[a] given sign [was] treated differently based solely on whether it [was] located on the same premises as the thing being discussed or not." *Id.* at 1472–73. Importantly, the *Austin* Court specifically stated, "we do not 'nullif[y]' *Reed*'s protections . . . [n]or do we cast doubt on any of our precedents recognizing examples of topic or subject-matter discrimination as content based." *Id.* at 1475. The Ordinance in this case is more analogous to the sign code at issue in *Reed*, in that a specific topic—requests for charity—is subject to different treatment than other messages. As set forth above, the Challenged Provisions are content based restrictions on speech and, therefore, strict scrutiny applies.

To survive strict scrutiny, Defendant must demonstrate that the Challenged Provisions "are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. Defendant identifies the following compelling government interests: "the prevention of disease"; "health, safety and welfare of the citizens and visitors to the City"; "health, safety and welfare of pedestrians and drivers of motor vehicles in the City"; "regulation of concentrations of panhandlers in small areas of the City preventing or delaying deployment of police or fire vehicles"; "health, safety and welfare of panhandlers, pedestrians and individuals traveling in the City during solicitations or pending solicitations"; "health, safety and welfare of citizens and visitors of the City from injury or disease caused by panhandling solicitations in certain areas of the City regulated by the Ordinance"; "health, safety and welfare of panhandlers who solicit at traffic stop lights (sometimes by pushing the buttons stopping traffic at busy intersections just so they can panhandle at red lights)";  and "drivers who are panhandled at major crossroads

endangering all participants." (Doc. 44 at 17–18).  Plaintiffs argue Defendant's proffered interests boil down to "protecting the health, safety, and welfare of panhandlers, pedestrians, drivers, and other members of the public" and "concentrations of panhandlers preventing or delaying the deployment of police or fire vehicles."  (Doc. 49 at 5).

Assuming these constitute compelling government interests, Defendant has made no argument as to how the Challenged Provisions are narrowly tailored to further those interests.  Defendant's blanket assertion that "the Ordinance sets forth, and the evidence in the enactment record proves, compelling state interests that satisfy strict scrutiny," (Doc. 44 at 17), is woefully insufficient, and it is not the Court's obligation to speculate or make arguments on behalf of Defendant.  Even so, the Court agrees with Plaintiff that the Challenged Provisions are unlikely to survive strict scrutiny.

First, regarding the Location Based Provisions, Defendant has offered no evidence as to why there is a greater health or safety risk associated with panhandlers in specified areas, including near bus stops or ATMs, as opposed to other areas.  *See Messina*, 546 F. Supp. 3d at 1244 ("As an example, the law prevents solicitation at bus stops . . . , where constant crowds might be expected to deter dangerous conduct, but it says nothing about solicitation in back-alleys, where there are fewer people to prevent or deter violent attacks.").  The general assertion that open urination and open defecation are "habits attributable to panhandlers," § 66-1(a), likewise does not provide justification for these location-based restrictions.  Second, Defendant has not offered evidence demonstrating that panhandling at night is inherently dangerous and, therefore, the After-Dark Provision is over-inclusive because it "prohibit[s] protected speech that poses no threat to public

12

safety." *Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1292 (D. Colo. 2015). Third, the Traffic Provisions are underinclusive in that they restrict solicitations for charity but not solicitations regarding any other subject matter, which would pose the same threat to public safety and deployment of police or fire vehicles. *See Reed*, 576 U.S. at 172 (holding that the sign code at issue was underinclusive—and therefore not narrowly tailored to further a compelling government interest—where the government failed to show that restricting certain types of signs but not others was necessary to promote traffic safety). Finally, the Conduct-Related Provisions are over-inclusive because they "sweep in much more speech than is necessary to promote public safety—including speech that is entirely innocuous." *Messina*, 546 F. Supp. 3d at 1240. Additionally, much of the conduct at issue, including assault, battery, and disorderly conduct, are already punishable by existing laws. Thus, because the Challenged Provisions are unlikely to survive strict scrutiny, Plaintiffs are substantially likely to succeed on the merits of their First Amendment claims.

### C. Irreparable Harm

Plaintiffs must show that "irreparable injury will be suffered unless the injunction issues[.]" *Siegel*, 234 F.3d at 1176. Further, to warrant a preliminary injunction, a party's irreparable injury "must be neither remote nor speculative, but actual and imminent." *Id.* (quotation omitted). "An injury is irreparable if it cannot be undone through monetary remedies." *Scott v. Roberts*, 612 F.3d 1279, 1295 (11th Cir. 2010) (quotation omitted). "[I]t is well established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271–72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S.

13

347, 373 (1976)); *see also FF Cosms. FL, Inc. v. City of Mia. Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) ("[A]n ongoing violation of the First Amendment constitutes an irreparable injury."). Here, the Court has already concluded that Plaintiffs are substantially likely to succeed on the merits of their First Amendment claims. Accordingly, Plaintiffs have demonstrated that their speech has been, and is being, chilled by the Ordinance sufficient to establish irreparable harm. *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020) ("Because the ordinances are an unconstitutional 'direct penalization' of protected speech, continued enforcement, 'for even minimal periods of time,' constitutes a per se irreparable injury." (quoting *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983)).

### D. Harm to Defendant and Public Interest

Plaintiffs must also show that "the threatened injury to [Plaintiffs] outweighs whatever damage the proposed injunction may cause [Defendant]" and "if issued, the injunction would not be adverse to the public interest." *Siegel*, 234 F.3d at 1176. These factors merge when the government is the opposing party. *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020). "The public interest is served by the maintenance of First Amendment freedoms and could not possibly be served by the enforcement of an unconstitutional Ordinance." *Howard v. City of Jacksonville*, 109 F. Supp. 2d 1360, 1365 (M.D. Fla. 2000). Likewise, Defendant "has no legitimate interest in enforcing an unconstitutional ordinance." *KH Outdoor*, 458 F.3d at 1272; *see also Otto*, 981 F.3d at 870. Again, having determined that Plaintiffs are substantially likely to succeed on the merits of their claims, the balance of harms and the public interest favor granting the requested preliminary injunction.

### E. Bond

Lastly, Plaintiffs request that the Court waive the bond requirement for the preliminary injunction. Federal Rule of Civil Procedure 65(c) provides that a "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, "it is well-established that the amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (quotation omitted). "Waiving the bond requirement is particularly appropriate where a plaintiff alleges the infringement of a fundamental constitutional right." *Complete Angler, LLC v. City of Clearwater*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009). Defendant does not object to this request. Accordingly, the bond requirement set forth in Rule 65(c) will be waived.

### IV. CONCLUSION

Based on the foregoing, it is **ORDRED** and **ADJUDGED** as follows:

1. Plaintiffs' Second Motion for Preliminary Injunction (Doc. 39) is **GRANTED**.
2. The City of Daytona Beach is **PRELIMINARILY ENJOINED** from enforcing §§ 66-1(c)(1) and (c)(3)–(4) of the City Code.
3. This Order shall remain in full force and effect until the entry of a final judgment adjudicating all the claims and all the parties' rights and liabilities unless sooner modified or dissolved.

**DONE AND ORDERED** in Orlando, Florida on August 29, 2023.

Case 6:22-cv-02192-WWB-RMN   Document 72   Filed 08/29/23   Page 16 of 16 PageID 3525

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

16