UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DENNIS SCOTT, CHAD DRIGGERS,
DOUGLAS WILLIS, and
GEORGE ROWLAND,

                                                  Case No.: 6:22-cv-2192-WWB-DAB

      Plaintiffs,

v.

CITY OF DAYTONA BEACH, FLA.,

      Defendant.
_____/

**APPELLANT'S MOTION FOR INJUNCTION PENDING APPEAL**

      In accordance with Rule 62, the Defendant/Appellant, CITY OF DAYTONA BEACH (sometimes hereinafter "Defendant" or "Daytona Beach"), moves the Court to enjoin enforcement of its preliminary injunction Order (ECF 72) pending resolution of its appeal (ECF 74).

**I.**    **Introduction and Statement of Issues:**

      This case presents a case of first impression in this Circuit: whether an ordinance regulating solicitations is reviewed for content-neutrality under the standards announced in Reed v. Town of Gilbert, Ariz., 576 U.S. 155 (2015) or whether those standards have been modified by the Supreme Court's more recent ruling in City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC, 142 S.Ct. 1464 (2022). The City of Daytona Beach maintains that Austin significantly modified the holding in Reed and that solicitation ordinances are to be evaluated under the body of case law which preceded Reed. (ECF 44 at 2-3). The key language in Austin is as follows:

Most relevant here, **the First Amendment allows for regulations of solicitation** - that

is, speech "requesting or seeking to obtain something" or "[a]n attempt or effort to gain business." Black's Law Dictionary 1677 (11th ed. 2019). To identify whether speech entails solicitation, one must read or hear it first. Even so, the Court has reasoned that ***restrictions on solicitation are not content based*** and do not inherently present "the potential for becoming a means of suppressing a particular point of view," so long as they do not discriminate based on topic, subject matter, or viewpoint.

Austin, 142 S.Ct. at 1473. (Emphasis added); *See, also*, Hines v. Pardue, __ F.Supp.3d __, 2023 WL 5254673 at *19 (S.D. Tex. Aug. 15, 2023) ("[S]olicitation restrictions represent content-neutral regulations, 'so long as they do not discriminate based on topic, subject matter, or viewpoint.'" (*quoting* Austin)).

    In determining that Daytona Beach's solicitation Ordinance was content-based and subject to strict scrutiny, this Court applied Reed and rejected Austin:

> Much of Defendant's argument centers around its proposition that Austin overturned the effect of Reed on "solicitation laws" like the Ordinance at issue in this case. This Court disagrees. At issue in Reed was a sign code that subjected designated categories of signs, including ideological, political, and temporary, to different restrictions. Reed, 576 U.S. at 159–161. The Reed Court held the sign code to be content based because it "single[d] out specific subject matter for differential treatment, even if it [did] not target viewpoints within that subject matter." Id. at 169. Later, in Austin, the Court considered whether a law prohibiting off-site billboards but allowing on-site advertising was content based. Austin, 142 S. Ct. at 1469–70. There, the Court held the law was content neutral because it did "not single out any topic or subject matter for differential treatment" and further reasoned that the law's "on-/off-premises distinction [was] . . . similar to ordinary time, place, or manner restrictions," as "[a] given sign [was] treated differently based solely on whether it [was] located on the same premises as the thing being discussed or not." Id. at 1472–73. Importantly, the Austin Court specifically stated, "we do not 'nullif[y]' Reed's protections . . . [n]or do we cast doubt on any of our precedents recognizing examples of topic or subject-matter discrimination as content based." Id. at 1475. The Ordinance in this case is more analogous to the sign code at issue in Reed, in that a specific topic - requests for charity - is subject to different treatment than other messages.

(ECF 72 at 10-11).

In its appeal, Daytona Beach intends to address a fundamental legal error made by this Court. This Court held that Daytona Beach's solicitation Ordinance (§66-1) applies only to charitable solicitations:

> In this case, the Challenged Provisions are content based because they apply exclusively to solicitations or requests for charitable donations. Stated differently, under the Challenged Provisions, individuals are only prohibited from asking for charitable donations while permitted to solicit regarding any other topic.
> …
> Contrary to Defendant's arguments, this is not a case where the government regulates all types of solicitation, without regard to topic, subject matter, or viewpoint.

(ECF 72 at 9).

The Court's holding is clearly in error. It ignores the plain text of Daytona Beach's Ordinance which applies its restrictions to *every* form of solicitation which requests an immediate donation. The Ordinance regulates political speakers, if they request an immediate donation; it regulates charitable speakers, if they request an immediate donation; it regulates religious speakers, if they request an immediate donation; and it regulates traditional panhandlers, if they request an immediate donation. The identity of the speaker, why they are seeking money and for whom they are seeking money plays no role in the enforcement decision.

When read in accordance with its plain language, it is clear that the Ordinance regulates *all* attempts to solicit an immediate donation of money (or other item of value) without regard to content or viewpoint. That being the case, the Ordinance should have been construed under the Austin standard, which provides for intermediate scrutiny.

Based on the record, Daytona Beach's Ordinance easily survives intermediate scrutiny.

Daytona Beach will also argue on appeal that this Court abused its discretion in denying an evidentiary hearing. Daytona Beach has always argued that its law is subject to intermediate scrutiny. However, it also argued that §66-1 could survive strict scrutiny because the Ordinance was justified by compelling government purposes and employed the least restrictive means of regulation. It is exceptionally rare for a government to attempt to defend its law under strict scrutiny and unheard of in the realm of solicitation case law. *Contrast*, <u>Henagan v. City of Lafayette</u>, 2022 WL 4546721 at *2 (W.D. La. Sept. 27, 2022) (Government introduced no evidence to support its solicitation ordinance under either strict or intermediate scrutiny). Not only did Daytona Beach defend on what amounts to a unique argument, but it identified specific facts which supported that unique claim – particularly with respect to medical and epidemiological evidence of the harm posed by unregulated solicitation to the public health and the endangerment of citizens, tourists and panhandlers alike by the reckless acts of panhandlers. Ultimately, it was irresponsible for the Court not to allow a full record to be developed on this unique argument and unique set of facts.

Any one of these arguments is likely to succeed on appeal and each of them justifies entry of a stay while the City pursues its appeal to the Eleventh Circuit.

## II.    **Facts.**

The material facts alleged by the Plaintiffs are few: they are for the most part homeless individuals who earn their living by begging along street corners. (ECF 44 at 3). They primarily solicit persons in motor vehicles as opposed to fellow pedestrians. (ECF 44 at 3; ECF 39-1 through 39-7). Plaintiffs rely on these donations for their livelihoods.

(ECF 44 at 3). One of the Plaintiffs has been arrested under the Ordinance on a number of occasions and each of them has received warnings from law enforcement officers. (ECF 44 at 3; ECF 35 at 1-5).

Daytona Beach's Panhandling Ordinance (§66-1 of the City Code) does not outlaw panhandling. Instead, the Ordinance makes use of conventional time, place and manner restrictions to exclude solicitors, such as Plaintiffs, from very limited portions of the City. Over 97.5% percent of the City remains available to Plaintiffs to conduct their commercial and social interactions. (ECF 44-2 at 3). As noted above, the Ordinance does not discriminate against speakers. Instead, the regulations are triggered by a request for the immediate donation of money or other item of value regardless of who asks or what they say. *See*, §66-1(b)(3). The Ordinance does not apply when pure speech is at issue. In particular, Plaintiffs are free to advocate for the plight of the homeless, anywhere and at any time, provided only that they do not solicit an immediate cash donation in conjunction with their speech. Id.

The Ordinance has two restrictions on what is properly viewed as conduct: (1) threatening or "aggressive panhandling" and (2) soliciting after dark. *See*, §§ 66-1(c)(1) and (2), §66-1(c)(4)(a), (e) – (h) and §66-1(c)(4)(i).

Daytona Beach justified the Ordinance and these time, place and manner restrictions on the same basis as many other cities do: providing a safe and pleasant environment and eliminating nuisance activity; preserving the safety of traffic flow and preventing traffic congestion; traffic and pedestrian safety; promoting tourism and aesthetics; safety and convenience of citizens using public fora such as streets and sidewalks; preventing crime; protecting Daytona Beach's retail trade; maintaining

property value; protecting the preserving the quality of Daytona Beach's neighborhoods, commercial districts and the quality of urban life and public order. (ECF 20 [Legislative Record]; *See, also*, ECF 44-5; §66-1 at (a)). *See*, United States v. Playboy Entm't Group, Inc., 529 U.S. 803 (2000), Smith v. City of Fort Lauderdale, Fla., 177 F.3d 954, 956 (11th Cir. 1999), Ayres v. City of Chicago, 125 F.3d 1010 (7th Cir. 1997), Heffron v. Int'l Soc. for Krishna Consciousness, Inc., 452 U.S. 640 (1981), Young v. Am. Mini Theatres, Inc., 427 U.S. 50 (1976), Madsen v. Women's Health Ctr., Inc., 512 U.S. 753 (1994), Cox v. State of New Hampshire, 312 U.S. 569 (1941), Metromedia, Inc. v. City of San Diego, 453 U.S. 490 (1981). However, Daytona Beach also laid an extensive record demonstrating the risk that solicitations involving the immediate donation of money pose to the public health – specifically in connection with spread of disease and public safety and welfare with the dangerous actions of the panhandlers. (ECF 20; ECF 44-5; *See, also*, §66-1 at (a)). This record evidence was intended to defend the Ordinance in the event that a court applied strict scrutiny in a legal proceeding.

III.    **Argument.**

     A.    **The standard of review.**

     Rule 62 allows for the stay of a final judgment pending an appeal:

> Injunction Pending an Appeal. While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Rule 62(d), Fed.R.Civ.P.

     Under Rule 62(d), courts in this Circuit are instructed to consider four factors in making this determination:

> For an injunction pending appeal, the movant must establish all the following: "(1) a substantial likelihood that [it] will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the [movant] unless the injunction is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest." (citation omitted).

State of Florida v. Dep't of Health & Human Services, 19 F.4th 1271, 1279 (11th Cir. 2021).

Of those four elements, the likelihood of success is generally the determinative factor. *See*, Gonzalez v. Governor of Georgia, 978 F.3d 1266, 1271 n. 12 (11th Cir. 2020) ("This factor is 'generally the most important' of the four factors"). However, the City need not show that it is guaranteed to prevail on appeal. In this case, Daytona Beach is seeking only to preserve a status quo which has been in effect for over four (4) years. In these circumstances, a lesser showing of a "substantial case" (on the probability of success prong) is appropriate:

> [A] motion can still be 'granted upon a lesser showing of a substantial case on the merits when the balance of the equities identified in factors 2, 3, and 4 weighs heavily in favor of granting the stay.' Garcia–Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986) (quotation omitted and alteration adopted). We have also 'emphasized' that granting a stay that simply maintains the status quo pending appeal 'is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the [stay] would inflict irreparable injury on the movant.' Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir. 1981) (per curiam) (quotation omitted).

LabMD, Inc. v. Fed. Trade Comm'n, 678 Fed. App'x 816, 819 (11th Cir. 2016); *See, also*, League of Women Voters of Fla., Inc. v. Fla. Sec'y of State, 32 F.4th 1363, 1370 (11th Cir. 2022) ("But of course, that 'traditional' four-factor standard does not always apply. For example, in some circumstances - namely, 'when the balance of equities ... weighs heavily in favor of granting the stay' - we relax the likely-to-succeed-on-the-merits requirement. .... In that scenario, the stay may be 'granted upon a lesser showing of a

'substantial case on the merits.'…" (citations omitted)).

**B. The Trial Court Abused its Discretion in Refusing to Conduct an Evidentiary Hearing.**

Daytona Beach points to serious error even before reaching the constitutional questions which are central to Defendant's injunction motion. The trial Court abused its discretion in refusing to conduct an evidentiary hearing in this matter despite Defendant's detailed request for a hearing. (ECF 45). This Court reasoned that there was no reason to conduct a hearing because Daytona Beach offered no good reasons for having one:

> Having reviewed the parties' submissions, the Court finds that Defendant has failed to state with sufficient particularity any material issue of fact or credibility determinations necessitating an evidentiary hearing.

(ECF 72 at 6). The Court's holding is egregiously incorrect. In fact, Daytona Beach specified 12 distinct categories of fact which were in dispute and which would benefit from a hearing:

a.     The physical geography and demographics of where the Plaintiffs' solicitations occur.

b.     When the Plaintiffs' solicitations occur.

c.     The alternative avenues of communication available under the subject Ordinance.

d.     The manner in which Plaintiffs solicit at intersections.

e.     The nature of the medians subject to the City's regulations and the manner in which the Plaintiffs solicit in those medians.

f.     Whether Plaintiffs' solicitations are intended solely for commercial purposes or whether their solicitations include a non-commercial message likely to be understood by others (such as drawing attention to the plight of the homeless).

g.     Whether the Ordinance substantially burdens Plaintiffs' speech given the abundant alternative avenues provided and, if so, what specific aspects of the Ordinance burden what specific aspects of Plaintiffs' speech.

h.      Whether Plaintiffs intend to engage in "aggressive panhandling" and whether Daytona Beach's ban on such conduct has any effect on Plaintiffs' speech.

i.      The details and substance of the sworn statement and testimony of Dr. Steven Miles in support of a compelling state interest.

j.      The details and substance of the sworn statements and testimony of Bellanca, Harwick, Kosinski, Pierelli, Ross and Thomas concerning the effects that they have witnessed of panhandling in Daytona Beach prior to and after the passage of the subject Ordinance.

k.      The substance and relevance of the sworn statement and testimony of John Clary, head of the intellectual property division of Daytona Beach when the subject Ordinance was enacted, regarding the percentage (in terms of acreage) of Daytona Beach available for panhandling after application of the distance parameters of the subject Ordinance.

l.      The details, substance and relevance of  each  of the Plaintiff's sworn statements and the credibility of the Plaintiffs regarding their sworn statements and the complaint.

(ECF 45 at 4-6).

The foregoing numerous factual disputes were supported by the Defendant both in the record on appeal which were the 10 hours of testimony and exhibits in 4 hearings for the enactment of the subject Ordinance (19-27) which included testimony of police officers, fire department officials, public works employees, the head of the GIS department, and Daytona Beach citizens as well as supportive affidavits to Defendant's opposition to the Plaintiffs' Second Motion for Preliminary Injunction (ECF 44) of  Dr. Steven Miles, Police Officer J.T. Thomas, business owner Tammy Kozinski, business owner Paul Anthony Bellanca and his general manager/employee, Harry Harwick, John Clary , Sam's Club employee Christina Pierelli, and business owner Oliver Ross (ECF 44-1 through 44-8).

Plaintiffs submitted affidavits which contradicted many of these facts, including

where and when the Plaintiffs' engaged in solicitations[1] and issues of narrow tailoring and

alternative avenues of communication. (ECF 25-1; 25-2; 25-3). Plaintiffs also contradicted

the City's claims that solicitations for immediate donation of money directly affected the

public health through the spread of disease and public safety through the actions of the

panhandlers. (Id.)

While District Judges have some discretion to decline to conduct an evidentiary

hearing, that discretion is limited to circumstances where the facts are not "bitterly

contested" as they are here:

> Furthermore, the trial court abused its discretion in failing to hold an
> evidentiary hearing in this case. An evidentiary hearing is not always
> required before the issuance of a preliminary injunction. Baker v. Buckeye
> Cellulose Corp., 856 F.2d at 169. Where the injunction turns on the
> resolution of bitterly disputed facts, however, an evidentiary hearing is
> normally required to decide credibility issues. Forts v. Ward, 566 F.2d 849,
> 851 (2d Cir. 1977); see, also, Commerce Park at DFW Freeport v. Mardian
> Construction Co., 729 F.2d 334, 341 (5th Cir. 1984). The extent to which a
> court is required to take oral testimony in a hearing on a motion for a
> preliminary injunction, and the extent to which it may rely upon affidavits
> reflect a tension between the need for speedy action and the desire for
> certainty and complete fairness. SEC v. Frank, 388 F.2d 486, 490 (2d Cir.
> 1968). In the case *sub judice,* the trial court granted the preliminary
> injunction based on the various conflicting affidavits and exhibits submitted
> by the parties and the abbreviated oral arguments of counsel. The
> conflicting affidavits placed in serious dispute issues central to appellees'
> claims. … In this complex antitrust action, where much depends upon the
> accurate presentation of numerous facts, the trial court erred in not holding
> an evidentiary hearing to resolve these hotly contested issues.

All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1538–39 (11th

Cir. 1989); *See, also,* Florida Atl. Univ. Bd. of Trustees v. Parsont, 465 F.Supp. 3d 1279,

---

[1] These factual details reflect directly on some of the legal issues such as whether the
Plaintiffs had standing to challenge the prohibitions against "aggressive panhandling" and
solicitations after dark.

1288–89 (S.D. Fla. 2020) *quoting* McDonald's Corp. v. Robertson, 147 F.3d 1301, 1312 (11th Cir. 1998) ("'[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue,' district courts must hold an evidentiary hearing on the propriety of injunctive relief.").

Likewise, it is an abuse of discretion for a trial Judge to resolve conflicting issues of fact without holding a hearing to weigh those facts. *See*, CBS Broad., Inc. v. EchoStar Communications Corp., 265 F.3d 1193, 1207 n. 18 (11th Cir. 2001) ("Had the court held an evidentiary hearing, it would have been free to discount Hawkins' statements as uncredible. However, on the face of Hawkins' affidavits and the Networks' arguments, the court was not at liberty to make such a credibility determination or inferential leap on this contested issue without the benefit of an evidentiary hearing."); *See, also*, Moon v. Med. Tech. Associates, Inc., 577 Fed. Appx. 934, 936 (11th Cir. 2014) (Citing CBS for same proposition).

The failure to conduct an evidentiary hearing in this case was an abuse of discretion for multiple reasons:

1.      The City of Daytona Beach identified twelve categories of facts that were in dispute and which would require resolution at a hearing, including fundamental issues pertaining to standing.

2.      After the City identified contested facts, it submitted affidavits which supported its version of the facts and the inferences to be drawn from them. The Plaintiffs submitted their own affidavits which contradicted the City's position. When faced with conflicting affidavits on key factual points, the District Court is precluded from resolving those disputes without conducting an evidentiary hearing.

3.      Issues of credibility are at play – particularly the City's medical expert's assessment that the risk of disease from the open defecation which often accompanies panhandling is dramatically increased when there is a personal exchange of money – the very target of this law.

4.      The parties have engaged in extensive discovery which has also included numerous depositions of Defendant's witnesses, hearings and rulings on their respective motions for protective orders. (ECF 53, 57, 59, 61, 63, 68). At a minimum, that intensive discovery should have alerted the District Judge to the reality that many key facts in this case were hotly contested.

5.      This case presents a constitutional question of first impression: are solicitation ordinances governed by the strict facial analysis adopted by Reed or has the Reed standard been significantly modified by Austin – as the City contends. The trial Court entered its injunction without the benefit of oral argument on this crucial constitutional question.

6.      The City of Daytona Beach has identified at least two instances where the District Court simply misconstrued the solicitation Ordinance: (1) first in finding that the Ordinance only regulated charitable solicitations; and (2) second in finding that the supposedly undefined term "panhandling" justified extensive statutory construction. Had the District Court conducted a hearing and considered argument on these issues – or had the Judge asked appropriate questions to test the Court's conclusions – those errors may have been avoided. That is, after all, the primary benefit of an evidentiary hearing.

**C.      Section 66-1 is not Content-Based; Intermediate Scrutiny Applies.**

The trial Court abused its discretion in granting a preliminary injunction because it erred in determining that §66-1 discriminated on the basis of content. *See, generally*, Curling v. Raffensperger, 50 F.4th 1114, 1121 (11th Cir. 2022), *citing* Gonzalez v. Governor of Georgia, 978 F.3d 1266, 1270 (11th Cir. 2020) ("[A] court abuses its discretion in granting a preliminary injunction if, in determining whether success is likely, it incorrectly or unreasonably applies the law.").

As noted in the introductory section, Austin is the Supreme Court's last statement on what it means for a law to be content-neutral or content-based. The Court noted that solicitation laws are not considered to be content-based just because they regulate a particular category of speech or because a regulator must hear the speech before determining whether the law applies. *See*, Austin, 142 S.Ct. at 1473 ("[T]he First Amendment allows for regulations of solicitation… To identify whether speech entails solicitation, one must read or hear it first. Even so, the Court has reasoned that restrictions on solicitation are not content based."). Such laws are content neutral "so long as they do not discriminate based on topic, subject matter, or viewpoint.". Id.

The District Court initially determined that §66-1 only regulated charitable solicitations. It is not clear how the Court could have possibly reached such a conclusion given the plain language of the Ordinance which clearly defines solicitations so that it reaches every conceivable instance where an immediate donation is made in response to a request:

> *Panhandle* means to beg or make any demand or request made in person for an immediate donation of money or some other article of value from another person for the use of one's self or others, including but not limited to for a charitable or sponsor purpose or that will benefit a charitable organization or sponsor. As used in this article, the word "solicit" and its forms are included in this definition.

That all-inclusive definition was specifically written so that there would be no exceptions; all instances where an immediate solicitation for money are included, regardless of content, viewpoint or the identity of the speaker.[2]

The requested donation certainly could be for charitable purposes. However, it could also be for political or religious purposes or to support some social cause. The City briefed this point repeatedly, comprehensively and as clearly as possible:

> A politician or clergyman who solicits a direct donation or contribution will be prosecuted under the Ordinance to the same extent as a panhandler – not because of their political or religious speech, but because they solicited incident to that speech.

(ECF 44 at 15).

> If a politician or an evangelist engages in solicitation, that individual will be subject to the Ordinance to the same extent as someone seeking alms. The Ordinance regulates the act of solicitation; not the content of the communication.

(ECF 44 at 19).

It appears that the trial Court went astray during an ill-advised attempt to construe statutory language which was clear and unambiguous on its face.[3] In fact, it is possible to identify the precise logical gap in the Court's analysis. The trial Court apparently understands that the defined term "panhandle" is a term of art which includes a number

---

[2] The fact that the Ordinance regulates only where there is an exchange of money or other thing of value does not transform the Ordinance into a content-based law. A distinction based on the exchange of money is not directed at the content of speech. *See*, StreetMediaGroup, LLC v. Stockinger, 79 F.4th 1243, 2023 (10th Cir. Aug. 22, 2023)

[3] The City will also argue on appeal that there was no cause to construe the Ordinance because it was plain and unambiguous. *See*, Fuerst v. Hous. Auth. of City of Atlanta, Georgia, 38 F.4th 860, 869 (11th Cir. 2022) ("[W]hen the statute's language is plain, the sole function of the courts ... is to enforce it according to its terms." (citation omitted)).

of concepts within its scope, including both "solicitation" and what might be termed "begging". (ECF 72 at 10: "A plain reading of this definition demonstrates that, under the Ordinance, "solicit" is treated as a subset of panhandling…"). The Court then makes a misstep, concluding that the law does not apply "to all types of solicitations as Defendant argues." (Id.).

It is true that the Ordinance includes every type of "panhandling" but does not refer to every type of "soliciting". But that is not because the Ordinance does not apply to all types of soliciting; it does. The reason why solicitation is not the term used is simply because it is a subcategory of the larger concept defined as "panhandling" as the Court observed in the preceding sentence.

The Court then makes an illogical breathtaking leap which is not grounded in the language of the Ordinance or even a sensible extrapolation of that language:

> [W]hen reading the Ordinance as a whole, it is clear it applies only to charitable solicitations.

(Id.). Where does that idea come from? The Order does not identify any other part of the Ordinance which must be read *in pari materia*. There  is no suggestion that one part of the law conflicts with another or that a definition is incomplete so that reference must be made to some other part of the Ordinance. The Order does not find that the term "panhandle" is vague or cannot be understood to also include the term "solicit" – which it does explicitly. *See*, § 66-1(b)(3) ("Soliciting is included in this definition of panhandling."). In short, the term "panhandle" is fully defined, internally consistent and does not have to be read in conjunction with "the Ordinance as a whole" or any portion of the Ordinance other than itself.

In its effort to construe an Ordinance which did not need any construction, the

Coury may have tripped up over its observation that "[t]he Ordinance does not provide definitions for begging and soliciting". (ECF 72 at 1, n. 1). The Court went on to consult Black's Law Dictionary for a common definition of the term "solicitation". (Id.). But there was no reason to bother with that effort. The Eleventh Circuit has long since observed that "soliciting," "begging," and "panhandling" are interchangeable terms". *See*, Smith v. City of Fort Lauderdale, Fla., 177 F.3d 954, 955 (11th Cir. 1999). In this context, "soliciting" and "begging" are simply swept up into the all-inclusive definition of "panhandling" in the subject Ordinance (66-1(b)(e).

In short, the trial Court attempted to construe an ordinance which was not in any need of interpretation to reach a result which is utterly unsupportable given the plain text of the law. The law was not intended to be content-based and it is not content-based.

Under Austin, a solicitation law which is content-neutral on its face is subject to intermediate scrutiny, not strict scrutiny. *See*, Reagan Nat'l Advert. of Austin, Inc. v. City of Austin, 64 F.4th 287, 293 (5th Cir. 2023) (Following remand from the Supreme Court, the Fifth Circuit concluded that "we apply intermediate scrutiny, meaning that the Sign Code's 'restriction on speech or expression must be 'narrowly tailored to serve a significant governmental interest'" (*citing* Austin at 1475-76)); *See, also*, StreetMediaGroup, LLC v. Stockinger 79 F.4th 1243 (10th Cir. Aug. 22, 2023) ("Because the Act and rules are content neutral under Supreme Court precedent, we review under the intermediate scrutiny standard of review."); Smith v. City of Fort Lauderdale, Fla., 177 F.3d 954, 956 (11th Cir. 1999) (Upholding a ban on solicitations on the City's beaches under intermediate scrutiny).

### D.   The Daytona Beach Panhandling Ordinance Survives Intermediate Scrutiny.

In its preliminary injunction Order, the trial Court did not address intermediate scrutiny at all.[4] The District Court's ruling was error. The Court should evaluate this request for an injunction pending appeal under intermediate scrutiny. As the City demonstrated in their briefing (ECF 44 at 15-17), §66-1 survives intermediate scrutiny.

The Ordinance contains numerous predicate clauses which set forth interests which have been deemed significant and important by cases applying intermediate scrutiny. The legislative record, consisting of four hearings, totaling over 10 hours, with 24 witnesses, is replete with supportive evidence of those significant and important government interests which satisfy intermediate review. (ECF 20). The Defendant has provided the court with sworn statements of Paul Anthony Bellanca (ECF 44-1), Harry Harwick (ECF 44-3), Tammy Kozinski (ECF 44-4), Christina Pierelli (ECF 44-6), Oliver Ross (ECF 44-7) and James Thomas (ECF 44-8) regarding the effects of panhandling on Daytona Beach all of which reflect substantial, as well as some compelling, government interests in regulating solicitations through the means adopted in §66-1.

The City also ensured that sufficient alternative avenues of communication were available to solicitors, amounting to 97.5% of the City's geographic area. (ECF 44-2 at 2-3).[5] The burden on speech is slight. Plaintiffs can either move a few feet to a lawful location to solicit money or they can engage in advocacy anywhere so long as they do not seek an immediate donation of money.

_____

[4] Plaintiffs also barely mention intermediate scrutiny in their briefing. Their eggs were clearly all in the content-based basket.
[5] Creating yet another factual dispute which should have necessitated an evidentiary hearing, the Plaintiffs filed a report which disagrees with Daytona Beach's calculation because of, among other things, the Defendant's methodology.

E.      **The Daytona Beach Panhandling Ordinance Survives Strict Scrutiny.**

The trial Court erred when it applied strict scrutiny to §66-1 rather than intermediate scrutiny. But even if strict scrutiny applies, Daytona Beach intentionally created a legislative record which demonstrated both compelling government interests in regulating panhandlers and the fact that the least restrictive means of regulation was selected. The effort to survive even strict scrutiny appears to be unique among reported cases as local governments generally concede that their regulations cannot meet that standard.

Here, Daytona Beach introduced expert testimony from a knowledgeable physician about the link between panhandling, open defecation and urination and the spread of deadly diseases (ECF 44-5; *See, also*, ECF 44-3 at 3; ECF 44-4 at 4-5; ECF 44-8 at 3-5) as well as testimonial record evidence that the actions of panhandlers caused accidents resulting in serious injury. The District Court provisionally accepted the fact that Daytona had identified compelling interests, but faulted the City for failing to demonstrate narrow tailoring:

> Assuming these constitute compelling government interests, Defendant has made no argument as to how the Challenged Provisions are narrowly tailored to further those interests.  Defendant's blanket assertion that "the Ordinance sets forth, and the evidence in the enactment record proves, compelling state interests that satisfy strict scrutiny," (ECF 44 at 17), is woefully insufficient, and it is not the Court's obligation to speculate or make arguments on behalf of Defendant. Even so, the Court agrees with Plaintiff that the Challenged Provisions are unlikely to survive strict scrutiny.

(ECF 72 at 12).

This statement gives short shrift to the briefing and record evidence on this very issue. (ECF 44 at 16-17; ECF 44-2; ECF 44-8 at 6-7). The Court's misapprehension of the record evidence again shows why the Court would have benefited from an evidentiary presentation. *Cf.*, Ranch House, Inc. v. Amerson, 238 F.3d 1273, 1284 (11th Cir. 2001)

("We therefore remand this case to afford the Defendants… an opportunity to develop a foundation for their claim that the statute's purpose was to combat secondary effects").

**F.      Balance of Harms; the Public Interest would be Served by a Stay.**

While preservation of First Amendment rights is of upmost importance in our democracy, §66-1 does not substantially interfere with Plaintiffs' right to speak, including the ability to panhandle. The City has shown that there were serious procedural and legal deficiencies in the injunction Order. It cannot be denied that Daytona Beach has a substantial likelihood of success on appeal.

Even with the Ordinance in effect, Plaintiffs are free to panhandle through most of the City and can engage in advocacy anywhere. In contrast, the present injunction Order severely constrains the City's ability to address government interests which this Court has suggested are substantial and may well be compelling. (ECF 72 at 10-11). In particular, the City has demonstrated a link between unregulated panhandling and disease as well as concerns with traffic and pedestrian safety.  If a stay of the injunction Order is not entered, the public interest will be irreparably harmed (in terms of the unacceptable risk of disease and physical injury to panhandlers and the public alike).

Some of the affidavits in support of Defendant's opposition to the Plaintiff's Second Motion for Preliminary Injunction state that the difference in safety and quality of life of the citizens and the panhandlers was greatly enhanced when the subject ordinance was passed (ECF 44-1 at 2, ECF 44-3 at 3-4, ECF 44-4 at 4, ECF 44-5 at 3-4, ECF 44-6 at 3, ECF 44-7 at 3, ECF 44-8 at 6).

A stay of the injunction pending appeal will preserve the health and safety of the City's residents and guests without substantially impeding Plaintiff's First Amendment

rights. *Cf.*, <u>New Georgia Project v. Raffensperger</u>, 976 F.3d 1278, 1284 (11th Cir. 2020) ("Because Georgia's decades-old Election Day deadline for absentee ballots does not threaten voting rights, and is justified by a host of interests, we stay the district court's injunction of that deadline.").

WHEREFORE, the City of Daytona Beach moves this Court to enter an injunction staying the effect of the preliminary injunction Order (ECF 72) until the conclusion of the appeal, with no bond.

*Respectfully submitted,*

  /s/ Michael H. Kahn
Michael H. Kahn, Esquire
Florida Bar No.: 0241921
MICHAEL KAHN, P.A.
482 N. Harbor City Blvd.
Melbourne, FL 32935
(321) 242-2564
Lead Counsel for Defendant
The City of Daytona Beach, Florida
Michael@michaelkahnpa.com
Roma@michaelkahnpa.com
Assistant@michaelkahnpa.com

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed and served on this _____ day of _____, 2023 by using the court's CM/ECF system

  /s/ Michael H. Kahn
Michael H. Kahn, Esquire
Florida Bar No.: 0241921