# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

DENNIS SCOTT, CHAD DRIGGERS,
DOUGLAS WILLIS and GEORGE
ROWLAND,

        Plaintiffs,

v.　　　　　　　　　　　　　　　　　　　　Case No.: 6:22-cv-2192-WWB-RMN

CITY OF DAYTONA BEACH FLORIDA,

        Defendant.
                               /

## ORDER

THIS CAUSE is before the Court on Plaintiffs' Motion for Partial Summary Judgment (Doc. 108), Defendant's Response (Doc. 122), and Plaintiffs' Reply (Doc. 124). In their Motion, Plaintiffs request entry of a declaratory judgment in their favor, a permanent injunction against enforcement of the city ordinance at issue, and a trial on the issue of damages for past enforcement thereof. (Doc. 108 at 25). For the reasons set forth herein, Plaintiffs' Motion will be granted.

**I.　　BACKGROUND**

Plaintiffs brought this case against Defendant City of Daytona Beach pursuant to 42 U.S.C. § 1983 for violations of their First Amendment rights to freedom of speech and expression. Plaintiffs challenge several provisions of Daytona Beach City Ordinance 19-27, codified at Code of Ordinances, City of Daytona Beach, § 66-1 (the "**Ordinance**"), which regulates panhandling within city limits.[1] Daytona Beach, Fla., Code of Ordinances

---

[1] The Ordinance defines "panhandle" as follows: "to beg or make any demand or request made in person for an immediate donation of money or some other article of value

ch. 66, art. I, § 66-1 (2022).  As relevant to the instant Motion, the Ordinance prohibits panhandling in the following areas of Daytona Beach: within twenty feet of the entrance or exit of commercially zoned property, bus stops and other public transportation facilities, ATMs, public parking lots and garages, parking meters, and public restrooms; within one hundred feet of daycares and schools; within one hundred and fifty feet of traffic intersections; and on the city boardwalk.  § 66-1(c)(3).  The Ordinance also makes it unlawful to panhandle, solicit, or beg at any operating outdoor dining area, amphitheater seating area, playground, or outdoor merchandise area; at any transit stop, taxi stand, or in a public transit vehicle; while the person being solicited is standing in line to be admitted to a commercial establishment; by touching the person being solicited without that person's consent; by using profane or abusive language during the solicitation or following an unsuccessful solicitation; by using any gesture or act intended to cause a reasonable person to be fearful or feel compelled to accede to the solicitation; while under the

---

from another person for the use of one's self or others, including but not limited to for a charitable or sponsor purpose or that will benefit a charitable organization or sponsor. As used in this article, the word 'solicit' and its forms are included in this definition. Panhandling is considered as having taken place regardless of whether the person making the solicitation received any contribution. Any purchase of an item for an amount far exceeding its value, under circumstances where a reasonable person would understand that the purchase is in substance a donation, constitutes a donation as contemplated in this definition. Begging is included in this definition of panhandling. Soliciting is included in this definition of panhandling." § 66-1(b)(3).

      The Ordinance does not provide definitions for begging and soliciting.  However, ordinarily, "solicitation" is defined as "[t]he act or an instance of requesting or seeking to obtain something; a request or petition," and "beg" is defined as "[t]o request earnestly; to beseech."  Solicitation, Black's Law Dictionary (11th ed. 2019); Beg, Black's Law Dictionary (11th ed. 2019).

influence of alcohol or an illegal controlled substance; or after dark.[2] § 66-1(c)(4)(b)–(i). Finally, the Ordinance prohibits "[a]ggressive [p]anhandling"[3] "on any sidewalk, highway, street, roadway, right-of-way, parking lot, park, or other public or semi-public area or in

---

[2] "After [d]ark means from one half hour after sunset until one-half hour before sunrise." § 66-1(b)(1).

[3] "Aggressive Panhandling" means:

a.      To approach or speak to a person and demand, request or beg for money or a donation of valuable property in such a manner as would cause a reasonable person to believe that the person is being threatened with imminent bodily injury or the commission of a criminal act upon the person approached or another person in the solicited person's company, or upon property in the person's immediate possession (for example, placing oneself within 2 feet of a solicited person and/or using abusive or profane language in a loud voice while demanding or requesting money); or

b.      To maintain contact with a solicited person and continue demanding, requesting or begging for money or a donation of valuable property after the solicited person has made a negative response to an initial demand or request for money or a donation (for example, walking in front of, next to, or behind a solicited person while continuing to demand, request or beg for money from that person after that person has refused to donate or give money); or

c.      To obstruct, block or impede, either individually or as part of a group of persons, the passage or free movement of a solicited person or a person in the company of a solicited person, including persons on foot, on bicycles, in wheelchairs or operating motor vehicles or persons attempting to enter or exit motor vehicles (for example, walking, standing, sitting, lying, or placing an object in such a manner as to block passage of another person or vehicle, or to require another person or driver of a vehicle to take evasive action to avoid physical contact); or

d.      To touch or cause physical contact to a solicited person or a person in the company of a solicited person, or to touch any vehicle occupied by a solicited person or by a person in the company of the solicited person, without the person's express consent; or

e.      To engage in conduct that would reasonably be construed as intended to intimidate, compel or force a solicited person to accede to demands.

§ 66-1(b)(2).

3

any public building lobby, entranceway, plaza or common area, public forum or limited public forum" and further prohibits a person from approaching a driver or passenger of a motor vehicle for the purpose of panhandling, soliciting, or begging if done in an "aggressive manner." § 66-1(c)(1), (4)(a). Violation of the Ordinance is punishable by a jail sentence, not to exceed sixty days, or a fine, not to exceed $500.00, or both. § 66-1(d) (citing Daytona Beach, Fla., Code of Ordinances ch. 1, § 1-14 (2022)).

Plaintiffs Dennis Scott, Chad Driggers, Douglas Willis, and George Rowland live in or near Daytona Beach and all experience poverty. (Doc. 35, ¶¶ 1, 12–15). Plaintiffs request charity by standing on public sidewalks or the medians and shoulders of public streets in areas frequented by pedestrians, near businesses, or near intersections and hold signs communicating their request for assistance or offer tokens in exchange for donations. (*Id.* ¶ 1). Plaintiffs receive food, gift cards and cash, and care packages containing water, hygiene products, and clothing items. (*Id.* ¶¶ 79, 92, 105, 118).

Since the Ordinance was enacted on February 6, 2019, local law enforcement has made at least 246 arrests for violations of the Ordinance. (*Id.* ¶ 68; Doc. 39-8 at 1).

Driggers has been arrested five times for violations of the Ordinance, and all Plaintiffs have received warnings from local law enforcement regarding the Ordinance. (Doc. 35, ¶¶ 80, 94–95, 108, 120). Due to the threat of arrest and prosecution for violations of the Ordinance, Plaintiffs have reduced the frequency of their solicitations or moved outside city limits when soliciting. (*Id.* ¶¶ 12–15). Plaintiffs allege that they want and need to continue to solicit donations to survive. (*Id.*).

As a result of the foregoing, Plaintiffs brought this suit, challenging the following provisions of the Ordinance: §§ 66- 1(c)(3), (c)(b)–(d) ("**Location-Based Provisions**")

4

(Claim 1), § 66-1(c)(4)(i) ("**After-Dark Provision**") (Claim 2), §§ 66-1(c)(3)(g), (c)(4)(a) ("**Traffic Provisions**") (Claim 3), and §§ 66-1(c)(1), (c)(4)(a), and (c)(4)(e)–(h) ("**Conduct-Related Provisions**") (Claim 4). Thereafter, Plaintiffs filed the Second Motion for Preliminary Injunction (Doc. 39), which the Court granted. (Doc. 72 at 15). Defendant filed an interlocutory appeal of the Court's Order granting the Preliminary Injunction, which is pending before the Eleventh Circuit Court of Appeals. (Doc. 74 at 1). Defendant also filed a Motion for Injunction Pending Appeal ("**Motion to Stay**," Doc. 76) to stay the effect of the Preliminary Injunction pending resolution of its interlocutory appeal, which the Court also denied. (Doc. 105 at 8).

## II.   LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it may "affect the outcome of the suit under the governing law." *Id.* "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313–14 (11th Cir. 2007). Stated differently, the moving party discharges its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

However, once the moving party has discharged its burden, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own

5

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quotation omitted). The nonmoving party may not rely solely on "conclusory allegations without specific supporting facts." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). Nevertheless, "[i]f there is a conflict between the parties' allegations or evidence, the [nonmoving] party's evidence is presumed to be true and all reasonable inferences must be drawn in the [nonmoving] party's favor." *Allen*, 495 F.3d at 1314.

### III. DISCUSSION

#### A. Standing

Plaintiffs first argue that they have standing to challenge the Ordinance and each of the Challenged Provisions. "The Constitution limits the jurisdiction of the federal courts to actual cases or controversies." *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1365 (11th Cir. 2017) (citing U.S. Const. art. III, § 2). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Id.* at 1365–66 (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). "Under settled precedent, the 'irreducible constitutional minimum' of standing consists of three elements: the plaintiff must have suffered an injury in fact, the defendant must have caused that injury, and a favorable decision must be likely to redress it." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The foremost standing requirement is injury in fact. An injury in fact consists of an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* (quotations omitted); *see also Speech First, Inc. v. Cartwright*, 32 F.4th

1110, 1119 (11th Cir. 2022). "Because the elements of standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation.'" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 561).

In this case, there is sufficient record evidence to establish Plaintiffs' standing as to each of their claims. Plaintiffs have been arrested and/or threatened with prosecution under the Ordinance for carrying on their regular panhandling—which Plaintiffs assert are constitutionally protected activities. (Doc. 39-1, ¶¶ 10–12; Doc. 39-2, ¶¶ 10–12; Doc. 39-3, ¶¶ 9–13; Doc. 39-4, ¶¶ 10–13). This enforcement action constitutes an injury for the purposes of standing. *Bischoff v. Osceola Cnty.*, 222 F.3d 874, 884 (11th Cir. 2000) ("Plaintiffs' testimony that they were threatened with arrest for engaging in free speech activities is evidence of an actual and concrete injury wholly adequate to satisfy the injury in fact requirement of standing.").

This injury analysis holds true for each of Plaintiffs' asserted claims. In Count 1, Plaintiffs challenge the Location-Based Provisions. (Doc. 35, ¶¶ 125–146). Although Defendant suggests there is no evidence that Plaintiffs panhandle in the restricted locations, Plaintiffs have testified that they panhandle frequently on sidewalks and near traffic intersections. (Doc. 39-1, ¶ 6; Doc. 39-2, ¶ 6; Doc. 39-3, ¶¶ 5–6; Doc. 39-4, ¶ 7). Maps of the areas affected by the Location-Based Provisions show significant overlap with both sidewalks and traffic intersections. (Doc. 20-6 at 5, 26–27). Plaintiffs have thus been arrested or threatened with arrest for activity in areas at least partially covered by the Location-Based Provisions. In Count 2, Plaintiffs challenge the After-Dark Provisions,

and have declared that they panhandle at night from time to time. (Doc. 35, ¶¶ 147–168; Doc. 39-5, ¶ 1; Doc. 39-6, ¶ 1; Doc. 39-7, ¶ 1). Defendant contends this claim is "conclusory and disputed," but has not pointed to facts disputing Plaintiffs' declarations. (Doc. 122 at 3). In Count 3, Plaintiffs challenge the Traffic Provisions. (Doc. 35, ¶¶ 169–189). Plaintiffs have been arrested or threatened with arrest while panhandling on roadway medians and sidewalks, areas expressly covered by the Traffic Provisions. § 66-1(c)(3)(g). Finally, Plaintiffs challenge the Conduct-Related Provisions in Count 4. (Doc. 35, ¶¶ 190–210). Plaintiffs have stated their panhandling may include second requests for alms or requests made within two feet of another person. (Doc. 108-1 at 9–10; Doc. 108-2 at 9–10; Doc. 108-3 at 9–10; Doc. 108-4 at 10). The Conduct-Related provisions prohibit such actions as "aggressive panhandling." Plaintiffs have established injury as to each of the Challenged Provisions.

Regarding causation, it is undisputed that police officers employed by Defendant effected the arrests and threats. (*See, e.g.*, Doc. 39-1, ¶¶ 10–12). Plaintiffs have thus also shown that Defendant caused their injuries. Finally, "a decision in Plaintiffs' favor declaring the chapters unconstitutional, either on their face or as applied to Plaintiffs, would redress the injury of being threatened with arrest for engaging in constitutionally protected activity." *Bischoff*, 222 F.3d at 885. Plaintiffs have standing to bring each of their claims.

    **B.**    **Declaratory and Permanent Injunctive Relief**

Plaintiffs seek declaratory judgment in their favor and a permanent injunction against enforcement of the Challenged Provisions. A permanent injunction is an extraordinary remedy that is warranted only if Plaintiffs establish: (1) success on the

merits; (2) irreparable harm absent injunctive relief; (3) the balance of equities among the parties favors the injunction; and (4) that issuance of the injunction is in the public interest. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir. 2006).

1. *Success on the Merits*

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting U.S. Const., amend. I). "Above all else, the First Amendment means that government generally has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618 (2020) (quotation omitted). "A regulation of speech is facially content based under the First Amendment if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quoting *Reed*, 576 U.S. at 163). Content-based laws are subject to strict scrutiny, whereas content-neutral laws are subject to intermediate scrutiny. *Barr*, 591 U.S. at 618. "Content-based laws . . . are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163.

The parties dispute whether the Challenged Provisions are content based. Solicitation, whether charitable or commercial, is protected speech under the First Amendment. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 789 (1988) ("Our prior cases teach that the solicitation of charitable contributions is protected speech."); *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 633 (1980)

("[O]ur cases long have protected speech even though it is in the form of . . . a solicitation to pay or contribute money." (quotation omitted)). However, "the First Amendment allows for regulations of solicitation—that is, speech 'requesting or seeking to obtain something' or '[a]n attempt or effort to gain business.'" *City of Austin*, 596 U.S. at 72 (quoting *Solicitation*, Black's Law Dictionary (11th ed. 2019)). "[R]estrictions on solicitation are not content based and do not inherently present 'the potential for becoming a means of suppressing a particular point of view,' *so long as they do not discriminate based on topic, subject matter, or viewpoint.*" *Id.* (emphasis added) (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 649 (1981)).

Here, the Challenged Provisions are content based because they apply only to solicitations for charitable donations. The Court has already twice arrived at this conclusion in orders granting a preliminary injunction and denying Defendant's Motion to Stay that injunction. (*See* Doc. 72 at 9–10; Doc. 105 at 5–6). Nonetheless, Defendant repeats its argument that because the Challenged Provisions apply to any request "for an immediate donation of money or some other article of value" regardless of speaker or context, all persons "who engage in solicitation, *as defined by § 66-1*, are treated the same, regardless of 'topic, subject matter, or viewpoint.'" (Doc. 122 at 12, 15 (emphasis added) (quoting *City of Austin*, 596 U.S. at 72)). The Ordinance restricts panhandling, defined as "beg[ging] or mak[ing] any demand or request made in person for an immediate donation of money or some other article of value from another person for the use of one's self or others." § 66-1(b)(3). The Ordinance further provides that solicitation is considered a subset of panhandling. *Id.* As the Court has already noted in its Order denying the Motion to Stay, this definition is part of the problem. This Court's—and the

Supreme Court's—definition of solicitation reaches beyond only requests for donation. *See City of Austin*, 596 U.S. at 72 ("[T]he First Amendment allows for regulations of solicitation—that is, speech 'requesting or seeking to obtain something' or '[a]n attempt or effort to gain business.'" (quoting *Solicitation*, Black's Law Dictionary (11th ed. 2019)). This definition includes requests for charitable donations, but also expressly covers efforts to gain business and extends to requests not involving the exchange of money, such as a solicitation to attend a church or to support a political cause. Relying on this definition, the Supreme Court in *Austin* determined that "restrictions on solicitation are not content based." *Id*. Defendant, in contrast, improperly employs a narrow definition of "solicitation" to target only the speech it wishes to restrict—requests for donations—and then uses the holding in *City of Austin* to argue the Ordinance's restriction on "solicitation" is content neutral.

*City of Austin* cannot support the Challenged Provisions because they target charitable solicitations but do not restrict any other sort of solicitation, whether political, religious, or commercial. *See Messina v. City of Fort Lauderdale*, 546 F. Supp. 3d 1227, 1240–41 (S.D. Fla. 2021) (holding a panhandling ordinance to be content based because "people are free to solicit pedestrians . . . for advice, for directions, for their prayers, for a signature on a petition, to read a treatise by John Locke, to join a political party, to visit a restaurant, to come to church . . . [a]s long as the speaker doesn't say something to the effect of 'I'm poor, please help' or 'Do you have some spare change?' he may approach a stranger anywhere in the City and utter any *other* message"); *see also Ind. C.L. Union Found., Inc. v. Superintendent, Ind. State Police*, 470 F. Supp. 3d 888, 903 (S.D. Ind. 2020) (holding that a statute's "plain text establishes its content-based nature, because it

11

defines the prohibited conduct by referring to the content of the speech – a request for an immediate donation of money or something else of value – and by referring to the function of the speech – requesting the donation or something else of value").

The Supreme Court's decision in *City of Austin* illustrates this point with favorable reference to *Heffron*. In *Heffron*, a state law restricted all solicitation to a specific location at the Minnesota State Fair and applied the restriction "against a religious practice that included 'solicit[ing] donations for the support of the Krishna religion.' As a result, members of the religion were free to roam the fairgrounds and discuss their beliefs, but they were prohibited from asking for donations for their cause outside of a designated location." *City of Austin*, 596 U.S. at 72 (quoting *Heffron*, 452 U.S. at 645). However, the restriction in *Heffron* was content-neutral because it applied "evenhandedly to all who wish[ed] to distribute and sell written materials or to solicit funds . . . whether commercial or charitable." *Heffron*, 452 U.S. at 648–49. Conversely, the plain language of the Ordinance at issue in this case circumscribes only solicitations for donations, but not solicitations to patronize a business, attend an event, or support a religious or social cause. Therefore, this is not a case where the government regulates all types of solicitations without regard to topic, subject matter, or viewpoint. Strict scrutiny applies.

To survive strict scrutiny, Defendant bears the burden of showing the Challenged Provisions "are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. Defendant must establish that the asserted harms are "real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Turner Broad. Sys., Inc. v. Fed. Commc'ns Comm'n*, 512 U.S. 622, 664 (1994). Laws can fail narrow tailoring when they are over-inclusive, i.e., they "burden substantially more

speech than is necessary to further the government's legitimate interests." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quotation omitted). Similarly, a law can fail narrow tailoring as underinclusive when the law targets one type of speech, but not another that poses the same danger to the government's asserted interest. *See Reed*, 576 U.S. at 172.

Defendant asserts as compelling interests the preservation of public health, safety, and welfare of its citizens generally, and specifically in the context of traffic safety for drivers and pedestrians, and of health hazards associated with panhandling. (Doc. 1-3 at 3). Assuming for the sake of argument that these are compelling interests, each of the Challenged Provisions fails strict scrutiny.

First, regarding the Location-Based Provisions, Defendant has offered no evidence showing that the asserted traffic safety or health concerns are greater in the areas affected by the Ordinance compared to other areas. *See Messina*, 546 F. Supp. 3d at 1244 ("As an example, the law prevents solicitation at bus stops . . . , where constant crowds might be expected to deter dangerous conduct, but it says nothing about solicitation in back-alleys, where there are fewer people to prevent or deter violent attacks."). The Location-Based Provisions are therefore fatally underinclusive.

The After-Dark Provision, on the other hand, is overinclusive because Defendants point to no evidence showing that panhandling at night presents any inherent danger and thus "burden[s] substantially more speech than is necessary to further the government's legitimate interest." *McCullen*, 573 U.S. at 486 (quotation omitted); *see also Browne v. City of Grand Junction*, 136 F. Supp. 3d 1276, 1292 (D. Colo. 2015) ("[T]he challenged

13

portions of Ordinance No. 4627 are over-inclusive because they prohibit protected speech that poses no threat to public safety.").

The Traffic Provisions are underinclusive in that they restrict solicitations for charity but not solicitations regarding any other subject matter, which would pose the same threat to public safety and deployment of police or fire vehicles. *See Reed*, 576 U.S. at 172 (holding that the sign code at issue was underinclusive—and therefore not narrowly tailored to further a compelling government interest—where the government failed to show that restricting certain types of signs but not others was necessary to promote traffic safety).

Finally, the Conduct-Related Provisions are over-inclusive because they "sweep in much more speech than is necessary to promote public safety—including speech that is entirely innocuous." *Messina*, 546 F. Supp. 3d at 1240. If the Conduct-Related Provisions applied only to tortious or criminal conduct, this would be a much closer question. However, among such conduct, the Conduct-Related Provisions also effectively prohibit any repeated request for charity, which does nothing to promote public safety. § 66-1(b)(2). At bottom, none of the Challenged Provisions can clear the high hurdle raised by strict scrutiny. Accordingly, Plaintiffs' claims succeed on the merits, and they are entitled to a declaratory judgment that the Challenged Provisions are unconstitutional.

      2.    *Irreparable Harm*

Plaintiffs must also establish that they will suffer an irreparable injury before a permanent injunction can issue. *KH Outdoors*, 458 F.3d at 1268. "An injury is irreparable if it cannot be undone through monetary remedies." *Scott v. Roberts*, 612 F.3d 1279,

14

1295 (11th Cir. 2010) (quotation omitted). "[I]t is well established that '[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *KH Outdoors*, 458 F. 3d at 1271–72 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also FF Cosms. FL, Inc. v. City of Mia. Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017) ("[A]n ongoing violation of the First Amendment constitutes an irreparable injury."). As discussed above, the Challenged Provisions violate Plaintiffs' free expression rights under the First Amendment. Accordingly, Plaintiffs have also established irreparable harm. *Otto v. City of Boca Raton*, 981 F.3d 854, 870 (11th Cir. 2020) ("Because the ordinances are an unconstitutional 'direct penalization' of protected speech, continued enforcement, 'for even minimal periods of time,' constitutes a per se irreparable injury." (quoting *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983)).

      3.    *Balance of the Equities and Public Interest*

Finally, Plaintiffs must show that their threatened injury outweighs any harm the injunction may cause Defendant, and that the proposed injunction is in the public interest. *KH Outdoor*, 458 F.3d at 1268. These two factors merge when, as here, a government entity is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1271 (11th Cir. 2020). "The public interest is served by the maintenance of First Amendment freedoms and could not possibly be served by the enforcement of an unconstitutional Ordinance." *Howard v. City of Jacksonville*, 109 F. Supp. 2d 1360, 1365 (M.D. Fla. 2000). Further, "neither the government nor the public has any legitimate interest in enforcing an unconstitutional ordinance." *Otto*, 981 F.3d at 870. Because the Challenged Provisions violate Plaintiffs' rights under the First Amendment, "the threatened injury to the plaintiff clearly outweighs whatever damage the

injunction may cause the city." *KH Outdoor*, 458 F.3d at 1272. Thus, a permanent injunction against the enforcement of the Challenged Provisions is warranted.

### C. Liability Under 42 U.S.C. § 1983

Plaintiffs also seek monetary damages pursuant to 42 U.S.C. § 1983 for past enforcement of the Ordinance. (Doc. 35, ¶¶ C–F). "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (2006) (footnote omitted). For the reasons set forth above, Plaintiffs have established that Defendant's enforcement of the Ordinance violates Plaintiffs' rights arising under the First Amendment. And the Ordinance is indisputably a legislative enactment of Defendant's City Council and enforced by police officers employed by Defendant. Therefore, Defendant is liable to Plaintiffs for money damages for its past enforcement of the Ordinance. *See id.* at 692 (holding that § 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights"). The amount of damages to which Plaintiffs are entitled will be determined at trial.

### IV. CONCLUSION

Defendant's arguments regarding the constitutionality of the Ordinance are unsupported by applicable law and the text of the Ordinance itself. Plaintiffs have demonstrated their entitlement to summary judgment in their favor and entry of a

permanent injunction against enforcement of the Ordinance. Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiffs' Motion for Partial Summary Judgment (Doc. 108) is **GRANTED**.

2. Sections 66-1(c)(1) and (c)(3)–(4) of the Code of Ordinances of the City of Daytona Beach, Florida are **DECLARED** unconstitutional.

3. The City of Daytona Beach is **PERMANENTLY ENJOINED** from enforcing §§ 66-1(c)(1) and (c)(3)–(4) of the Code of Ordinances.

4. The issue of damages will be fully resolved at trial set to begin on **September 16, 2024**, as provided in the Court's Notice at Docket Entry 144.

5. On or before **August 2, 2024**, the parties shall meet to prepare a new Joint Pretrial Statement solely on the issue of damages. On or before **August 9, 2024**, the parties shall file with the Court their Joint Pretrial Statement, along with trial briefs.

6. Defendant's *Daubert* Motion to Exclude the Expert Opinion and Testimony of Ruth McColly (Doc. 107), Plaintiffs' *Daubert* Motion to Exclude Expert Testimony of Dr. Steven Miles (Doc. 109), Plaintiffs' *Daubert* Motion to Exclude Expert Testimony of Michael Dax Flinn (Doc. 110), Defendant's Motion in Limine Directed to Testimony of Pedro Greer, M.D. (Doc. 125), Defendant's Motion in Limine Directed to Testimony of Ruth McColly (Doc. 126), and Plaintiffs' Motion to Preclude Testimony or Other Evidence Relating to Defendant's Traffic Safety Justification at Trial (Doc. 127) are **DENIED as moot**.

**DONE AND ORDERED** in Orlando, Florida on July 18, 2024.


_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record